FILED ✓
RECEIVED ___ LODGED
___ COPY

7                AUG 1 9 2014                7

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

John Kristoffer Larsgard ADC#271552
Name and Prisoner/Booking Number

ASPC-Yuma /La Paz Minimum Security Unit
Place of Confinement

P.O. Box 8819
Mailing Address

San Luis, AZ 85349
City, State, Zip Code

(Failure to notify the Court of your change of address may result in dismissal of this action.)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

John Kristoffer Larsgard )
(Full Name of Plaintiff) )
                    Plaintiff, )
                              )
vs.                           )   CASE NO. CV-13-0638-TUC-DCB
                              )   (To be supplied by the Clerk)
(1) David Straub              )
(Full Name of Defendant)      )
(2) et al                     )
                              )
                              )   CIVIL RIGHTS COMPLAINT
(3) _____    )   BY A PRISONER
                              )   For Declaratory Relief and Damages
(4) _____    )   ☐ Original Complaint
              Defendant(s).   )   ☐ First Amended Complaint
☒ Check if there are additional Defendants and attach page 1-A listing them. )   ☒ Second Amended Complaint

## A. JURISDICTION

1.   This Court has jurisdiction over this action pursuant to:
     ☐ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
     ☐ 28 U.S.C. § 1331; Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971).
     ☒ Other: 28 USC 1343(a) 42 USC 1983, 28 USC 2201, 28 USC 1331

2.   Institution/city where violation occurred: ASPC-Tucson/Rincon Unit and while hospitalized still under ASPC-Tucson custody at Univ. AZ Medical Center, Tucson and St. Joseph's in Phoenix, Arizona

550/555

Defendants  Continued from Page 1

2) Stangl, (first name unknown/FNU)

3) Mulcahey, (FNU)

4) Schröder, (FNU)

5) Jacobs, Ann

6) Ryan, Charles L

7) Vasquez, (FNU)

8) Young, (FNU)

9) Wexford Health Sources Inc.

10) Corizon Health Inc.

1A

## B.  DEFENDANTS

1.   Name of first Defendant: David Straub
     CO III _____ . The first Defendant is employed as:
            (Position and Title)           at ASPC-Tucson / Rincon _____ .
                                                              (Institution)

2.   Name of second Defendant: FNU Stangl
     CO III _____ . The second Defendant is employed as:
            (Position and Title)           at ASPC-Tucson / Rincon _____ .
                                                              (Institution)

3.   Name of third Defendant: FNU Mulcahey
     CO II _____ . The third Defendant is employed as:
            (Position and Title)           at ASPC-Tucson / Rincon _____ .
                                                              (Institution)

4.   Name of fourth Defendant: FNU Schröder
     Warden _____ . The fourth Defendant is employed as:
            (Position and Title)           at ASPC-Tucson _____ .
                                                              (Institution)

(Continued on page 2A)

If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.

## C.  PREVIOUS LAWSUITS

1.   Have you filed any other lawsuits while you were a prisoner?          ☒ Yes        ☐ No

2.   If yes, how many lawsuits have you filed? _2_ . Describe the previous lawsuits:

     a. First prior lawsuit:
        1.   Parties: Larsgard _____ v. Ryan
        2.   Court and case number: CV12-2149-PHX-SRB-JFM _____ .
        3.   Result: (Was the case dismissed?  Was it appealed?  Is it still pending?) _____
             Pending _____ .

     b. Second prior lawsuit:
        1.   Parties: Larsgard _____ v. Corizon  Health  Inc.
        2.   Court and case number: CV13-1747-PHX-SRB-JFM _____ .
        3.   Result: (Was the case dismissed?  Was it appealed?  Is it still pending?) _____
             Pending _____ .

     c. Third prior lawsuit:
        1.   Parties: _____ v. _____
        2.   Court and case number: _____ .
        3.   Result: (Was the case dismissed?  Was it appealed?  Is it still pending?) _____
             _____ .

If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.

5. Name of fifth Defendant: Ann Jacobs. The fifth Defendant was employed as: Deputy Warden at ASPC-Tucson/Rincon.

6. Name of sixth Defendant: Charles L. Ryan The sixth Defendant is employed as: Director of the ADC at the ADC Central Office. in Phoenix, AZ.

7. Name of seventh Defendant: FNU Vasquez. The seventh Defendant is employed as: CO II at ASPC-Tucson/Rincon B.

8. Name of eighth Defendant: FNU Young. The eighth Defendant is employed as: CO II at ASPC-Tucson/Rincon B.

9. Name of ninth Defendant: Wexford Health Sources, a Florida corporation. The ninth Defendant was the contracted medical provider to ADC inmates from July 1st 2012 thru March 4th 2013

10. Name of tenth Defendant: Corizon Health Incorporated, a Deleware Corporation. The tenth Defendant is currently the contracted medical provider to ADC inmates.

## D. CAUSE OF ACTION

### COUNT I

1. State the constitutional or other federal civil right that was violated: <u>Sixth Amendment</u>

2. **Count I.** Identify the issue involved. **Check only one.** State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☒ Other: <u>Counsel for Direct Appeal</u> <u>(Access to)</u>

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count I. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   1 On December 3rd 2012 Plaintiff hereinafter Kris, suffered an injury to his cervical spine.

   2 ASPC-Yuma/Cheyenne staff did nothing and accused Kris of malingering. (See also CV12-2149-PHX-SRB-JFM hereinafter CV12-2149) Kris was kept without access to pen, paper and mail but was allowed a couple of calls which in the face of his injuries were meaningless and without any legal documents he could not do much with his criminal appeals attorney Criss Candaleria of Pinetop, Arizona.

   3 On December 19th 2012, Kris was transfered from ASPC-Yuma to ASPC-Tucson (Rincon mental health unit) while his neck was still broken as ASPC-Yuma medical staff insisted that he was just malingering and that Kris only had psychological problems.

   4 At the mental health unit Defendant Straub was the assigned CO III. Kris was not allowed to have writing materials or any legal documents. At the time of his transfer, Kris had a call scheduled to speak with his criminal appeals attorney. Kris told Defendant Straub about this, Defendant Straub said that unless Kris could produce documentation, he would not be allowed to speak to his attorney. That being documentation that would prove that the call was absolutely necessary, apparently as defined by Defendant Straub. (Continued on 3A)

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   Direct Appeal was lost. (See page 3H)

5. **Administrative Remedies:**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☒ Yes ☐ No
   b. Did you submit a request for administrative relief on Count I? See explanation below ☒ Yes ☐ No
   c. Did you appeal your request for relief on Count I to the highest level? See exp. below ☐ Yes ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. Most facets of this count were exhausted. Kris did make all possible attempts at exhaustion but was unable to exhaust some claims due to the actions of Defendants as described in the supporting facts. Also, grievance mechanisms were not available to Kris while in the hospital.

5 Eventually after being transferred to Tucson, despite nursing staff still alleging that he was just faking injuries, a "Dr. Moyse ordered Kris taken to UMC-South Campus Hospital.

6 At UMC-South Campus Hospital it was determined that Kris' neck was broken, Kris was transferred to the emergency room/trauma center at the University of Arizona in downtown Tucson from UMC-South Campus by ambulance. Kris underwent extensive surgery hours later. (for more details as to injury see CV12-2149)

7 Immediately prior to surgery, Kris had to sign a consent for surgery. At this time, Kris was informed by hospital staff that there was a chance Kris might not survive surgery. Kris then asked one of the officers accompanying him if he could make a call to his mother or a call to one of his attorneys to leave a message. The officer said, "NO" stating this was against policy.

8 Kris survived the surgery and between his stay first at UAMC then at Select Specialty hospital at St. Josephs spent more than a month in the hospital. At this time Kris' criminal appeal was still pending. (ICA-CR-12-0283 AZ Court of Appeals 1st Precinct)

9 After waking up from surgery, Kris made numerous requests to the corrections staff accompanying him that he be allowed to speak to his attorney. The names of these officers and their direct supervisors will be discoverable, in that they filed detailed corrections logs. Through discovery Kris will be able to establish exact dates and times. Also during this time, Kris had no means of keeping a record and was entirely denied access to mail, both incoming and outgoing.

10 Finally, a guard told Kris that he would be allowed a call with his attorney Criss Candaleria, this after the guard had spoken to his supervisor. However, he was not allowed any privacy for this call in that CO staff would not leave the room and listened to the call ostensibly for security reasons. Also, a 10 minute phone call was not sufficient to deal with the criminal appeals issues at the time.

11 During the call, shocked at learning of the extent of his injuries, attorney Candaleria wanted to know Kris' whereabouts. Kris who had not been warned what he was allowed and not allowed to discuss with his attorney, told attorney Candaleria what hospital he was at.

12 After this Kris was verbally reprimanded for disclosing his location thereby "compromising security" by the CO who was present. This demonstrates that CO staff were not merely overhearing the call but actually intently listening to it for content.

13 Kris was still denied access to mail.

14 After about a week at UAMC, Kris was moved again by ambulance to Select St. Josephs in Phoenix, Arizona for further care and rehabilitation.

15 Kris was still after numerous requests denied access to outgoing and incoming mail, private telephone calls with his attorney and means of documenting anything at all.

16 Kris has since learned that during his time at Select St. Joseph's Hospital, his criminal appeals attorney made numerous requests to be allowed to visit Kris to work on the appeal while Kris was still in the hospital. Kris' criminal defense attorney at the time can attest to this. These requests were summarily denied by ADC officials who cited policy as their reason. At this time these officials are unknown to Kris but their identities should be easily discoverable.

17 Kris has also subsequently learned that all mail that he received while he was in the hospital was returned to sender in violation of ADC policy and Kris' First Ammendment rights to communicate with the outside world.

18 This includes mail from his attorneys, (criminal and civil) mail from the Arizona Attorney Generals office, mail from the attorneys representing Wexford employees who are defendants in (CV12-2149) and even mail from the District court in (CV12-2149).

19 Kris asks this court to take judicial notice of the docket in (CV12-2149) which the clerk documents that Kris' mail was in fact returned to the court.

20 Kris at one time while at Select St. Josephs asked an officer if he could be allowed to send a letter to the clerk or the judge in (CV12-2149). Kris was told that this was too much of a security risk as Kris could be "conspiring with the judge" to escape and that they therefore could not allow it per ADC policy again citing security concerns.

21 Kris made his request for outgoing and incoming mail and private telephone calls with his attorney so many times to so many different CO's that were guarding him at the hospital that he has no reason to believe that they were not acting persuant to policy or custom set by the ADC to have an effect as law. Kris could on discovery learn the identities of all guards who guarded him at the hospital. However, at this time, it would seem that Defendants Ryan and Schrider were the official policy makers.

22 When Kris was released from the hospital he was placed at the Rincon 9 medical unit where Defendant Stangl is assigned CO III. At this time, all submission deadlines in Kris' criminal appeal had lapsed and counsel had to make all submissions without Kris' input, despite wanting Kris' input and asking for it.

23 Consequently, important issues had been left out of the appeal and forever after were procedurally defaulted. Specifically these issues include inter alia, the issues of denial of access to legal paperwork in the Navajo County Jail; and prosecutorial misconduct in the criminal case. To both issues contemporaneous objections had been made in the trial court. As to the latter issue, Kris' counsel persuant to Arizona Rules of Criminal Procedure 20 had filed a post verdict motion for a new trial.

24 However, when Kris was finally allowed to meet with Candaleria's associate, all submissions had been made in the appeal. Kris' attorney due to the fact that Kris was back in prison a prison facility was now allowed by ADC officials to visit him. Kris' criminal appeals attorney sent his associate Gregory Barry.

25 During the visit from attorney Candaleria's associate Gregory Barry, Kris was told by Defendant Stangl that the "only option was to visit in a common day room." ADC had delegated the responsibility of the visit logistics to Defendant Stangl. She had ample notice. Apparently, visiting in the day room with attorneys was customary for inmates in the Rincon 9 medical unit. As such, the Unit Deputy Warden, Defendant Jacobs would certainly have been aware of such practices.

26 The day room in Rincon 9 was in such a location where the "control room" was located only approximately ten (10) feet from where Kris and his attorney had to sit. Also, there was frequent traffic through the area by staff and even the occasional inmate. All conversation could be easily overheard.

27 An incident occured during the visit, a CO came and sat approximately 5 feet away and appeared to be intentionally listening to the conversation, he was not doing anything else.

28 Kris asked the guard politely if he could please allow some privacy as this was an attorney-client visit. The guard replied that "he did not have to do anything an inmate asked of him." Attorney Barry then asked the guard to please move. The guard acquiesced. Yet, this exchange, along with similar instances of Kris attempting to stand up for his rights targeted him for retaliatory conduct. Even with the guard having left, conversation could easily be overheard by those in the control room, CO's walking past and medical staff. As such, Kris was unable to fully and freely discuss his case. Specifically, the deficient medical treatment ADC and its contractors had provided.

29 Attorney Barry explained that he and Candaleria had already had to file the reply brief, that they both had made numerous attempts at getting ADC to allow a visit, unfortunately by this time it was too late to add anything to the appeal as it had already been submitted. Neither attorney had known exactly how serious Kris' medical condition/injuries had been. As a result of no access to his attorney, important issues had been procedurally defaulted.

30 While still proceeding pro se in CV12-2149 and still housed in Rincon 9 medical unit, Kris had to telephonically attend a scheduling conference/planning meeting. (the exact date can easily be obtained, these are among some records mysteriously lost during subsequent searches) As Defendant Stangl was not available, Defendant Mulcahey had come from Building 7 to oversee the call. Defendant Mulcahey had decided to withold documents to be delivered from the Arizona Attorney General's office to Kris until five (5) minutes before the call. Specifically, AG's proposed report of parties planning meeting. As such, Kris was unable to prepare. After thirty (30) minutes, Defendant Mulcahey told Kris that his thirty (30) minutes was up.

Kris relayed this to the attorneys present on call, assistant Attorney General Kelley Morrissey and Kenneth Moscow (JSH Firm). The assistant Attorney General Morrissey asked to speak to the COIII (Defendant) Mulcahey. She apparently told the CO III Defendant Mulcahey, "we are not done," "and this is a required, court ordered call." Mulcahey became visibly upset, but allowed the call to continue. After the call, still visibly upset, Mulcahey told Kris he had better not go over time on legal calls again or the ADC would not allow him to have future "legal calls."

31 To illustrate how violations continued, during a legal call scheduled by CO III Stangl, a choice was given to Kris to either take the legal call in a public area or to get no legal call at all. During this call to Kris' civil attorney and the attorney who now represents him in CV12-2149 and CV13-1747-PHX-SRB-JFM (hereinafter CV13-1747). Kris chose to take the call in the public area after initially objecting. Staff apparently did listen to the call. After the call, a CO asked Kris why he had made certain statements during the call. (The call was regarding medical care, injuries and to secure representation) When Kris would not answer, by politely telling the guard that he did not feel like talking about it, the guard warned him that he could be placed on report for "obstructing staff." Ultimately, Kris was not placed on report.

32 When returned from the hospital to prison (Kris was returned from hospital on February 6 2013) Kris attempted to file an informal complaint regarding not being allowed access to outgoing mail and private legal calls while hospitalized. (The informal complaint ADC form 1801-11(e) is a prerequisite to a formal grievance) Defendant Stangl told Kris that this was out of security concerns, a valid policy correctly applied. When Kris pressed the issue, he was told that filing an informal complaint could lead to disciplinary charges. At the time Kris wanted to minimize conflict with staff and was still recovering from major surgery. (For details on this, Kris asks that the court please refer to documents in CV12-2149 and take judicial notice of same)

33 As to the issue of incoming mail being returned to sender, Defendant Stangl allowed an informal complaint on this. Kris then filed a formal complaint, answered by Defendant Jacobs in the form of an apology admitting that this had happened and would not happen again. At the time Kris accepted this as truth, not knowing the extent of documents returned to the court, attorneys (including Kris') and adversaries in CV12-2149.

34 The response from Defendant Jacobs claimed this was a few isolated instances. By the time Kris learned the extent it was too late to appeal her findings. Also, mishandling of legal mail did not stop - Kris can point to several occurrences subsequent to this. Most egregiously the order denying reconsideration of Charles Ryan as a Defendant (first motion) was not delivered to Kris until three (3) months after the prison had received it. Numerous other instances can also be named. Yet Kris is restrained by the 15 page limit to this complaint from innumerating all. It is clear that the problems were systemic at Rincon Unit and in Tucson prison. It would be impractical to name every CO involved. They were clearly acting according to custom that had the effect of law.

35 A few selected examples, most of which occurred after Kris was moved from Rincon 9 to Rincon 8 (May 14th 2013) include, staff reading legal mail, CO Michaels and others insisting that they had a right to read sections of Kris' outgoing legal mail as long as they did not read it in its entirety, staff questioning Kris about mail from the Clerk of the United States Supreme Court, insisting they had the right to do so, staff delaying processing of legal mail and staff refusing to collect legal mail.

36 Kris attempted to grieve each instance, at the time his COIII was Straub who initially processed these informal complaints but as they kept occurring increasingly just ignored them. All formal/informal grievances will be discoverable in this matter - Kris has copies or handwritten records of most. Kris has reviewed his records and determined that Straub not Bartuccio is the cause of the inability to exhaust all grievances through his failure to answer the informal

complaints in a timely manner. Kris has detailed notes of this.

37 At first Kris believed that the administration specifically Jacobs and the CO III's were telling the truth. After a while it became clear that the problems were serious with access to mail, access to photocopies and legal materials. Therefore Kris started filing and following up on these grievable issues. This led to such statements as by "CO III Straub as," "its your right to file grievances, but I know you are only doing it to be a pain in the ass." Further implying that if Kris did not stop insisting on his constitutional rights to mail, attorney contact, medical care, and similar substantial issues through grievances, there would be consequences for Kris.

38 Defendant Straub also refused to let Kris have legal calls with his counsel in CV12-2149 stating that he would not allow any legal calls as attorney Hadous was listed as a business attorney with the Arizona Bar and according to his investigation he did not feel that Kris had need to speak to a business attorney. This during a time when Kris was having trouble even sending mail. Kris did file an emergency motion (CV12-2149) with the court (which had to be smuggled out of the prison by another inmate asking) it to intervene. Striking the motion citing local rule prohibiting represented parties from filing on their own behalf. Magistrate Judge James F. Metcalf nevertheless ordered Kris' attorney to respond. This response confirms Kris' difficulties in getting a legal call, Kris asks this court to take judicial notice of these docket entries).

39 Corizon had taken over medical care at this time. Kris as a result of their policies suffered interruptions of pain medications for which there were current prescriptions multiple times. One time leading to withdrawals, in June, Kris' morphine was not refilled for over a week along with other meds such as for seizures. Also, Corizon's blanket policies meant that regardless of how medically necessary, Kris would not be allowed certain medications that he had been receiving before Corizon took over medical care for the ADC. Kris also suffered deprivations in the form of denials of follow-up, specialist care, physical therapy and similar medically necessary services. These issues are not adequately covered by CV13-1747 but are mentioned here only to emphasize on how these on-going violations affected Kris' ability to assist in his own appeals and higher appeals on issues not procedurally defaulted to the Arizona and United States Supreme Courts. The on-going denial of care, allowed by ADC, impaired Kris' ability to participate in his own appeals and assist counsel.

40 At the time Kris was still in Rincon 9 prior to May 14th 2013, he had been told by his mother on the telephone that Norwegian journalist Eirik Mosveen of Norway's largest newspaper V.G. (Verdens Gang) had contacted ADC to attempt to interview him about his injuries and lack of treatment as well as his criminal case. At this time ADC had told them that no interview would be considered.

41 Kris filed an informal complaint with CO III Stangl who replied "that this was not his (Kris') issue to grieve." Kris filed a formal grievance to which Defendant Jacobs answered that there was no evidence that anyone wanted to interview Kris. Kris appealed the next day, however, the appeal was rejected by CO IV Bartuccio as being out of time frames. Bartuccio, as she had a custom of doing to dispose of grievances easily, counted the time frame as being when the response was signed by Jacobs, not when it was received by Kris. As such, in Bartuccio's version of reality, the time frames had already lapsed before Kris even got the response.

42 Kris can identify a number of similar actions by Bartuccio and Straub.

43 Finally, unexpectedly, weeks before later while in housing unit #8, Defendant Mulcahey came and got Kris out of his cell to sign a media release form. This form asked Kris whether he would consent to video taping, photographs and notes being taken. Kris filed the form consenting to all. A few days later Mulcahey came and got Kris out of his cell. Kris was allowed to speak via telephone call, with the journalist for twelve (12) minutes while being monitored by Mulcahey.

44 ADC has no procedures or process that is publicly available to ensure that interview requests are not denied for impermissible reasons. Neither Kris nor the newspaper was ever given a reason for denial.

45 On information and belief, the ADC allows media that is "prosecutor friendly" to interview and record its inmates such as TNT's "Cold Justice" interviewing an inmate at Eyman Complex and airing it. Kris saw this on TV while in prison.

46 Yet ADC Director Ryan has a documented history of refusing to speak with those critical of his prison system. For instance, a few years back he even refused to meet with Amnesty International who had concern about how inmates were being treated in the ADC, citing "security concerns."

47 On information and belief, Charles Ryan previously worked for the Department of Defense overseeing prisons in Iraq, most notoriously Abu Ghriab, and has experienced prison conditions being exposed to the media, so it is easy to understand why he would want to conceal conditions in the ADC.

48 In the instant case, no special access to Kris beyond what was allowed by the public i.e. approved social visitors, was requested. Journalist Eirik Mosveen would have followed any instructions and complied with any procedure. It is clear that this was a denial of a meeting without any stated reason. Yet Kris did have a pending case in which ADC officials were named as Defendants. Allowing the newspaper to photograph Kris would have allowed people to learn of his injuries more graphically and medical conditions within the prison which Ryan seeks to conceal. (In fact a photographer with Mosveen was chased away by guards when he attempted to photograph ASPC-Tucson from the outside, from a public location outside of the prison). The story was eventually printed with an abbreviated interview.

49 Following the brief telephone interview and more grievances by Kris, retaliatory action against him intensified. Nothing, it proved, could be done to Kris in terms of disciplinary measures as grievances were not malicious, fraudulent or frivilous.

50 At this time, a Corizon employee, one of many also engaged in retaliatory conduct, namely Defendant Zamaripa stated to security that threatening legal action was a threat to staff. Kris immediately filed an informal to this in writing. Straub answered that it was according to Zamaripa, due to threat of litigation. Yet when this grievable matter went to formal stage, Zamaripa changed her story to, Kris was exhibiting stalking behavior towards her.

51 Staff, specifically CO Vasquez and CO Young started searching Kris' cell every day as retaliation for grievances as encouraged by Defendant Straub. Other officers followed suit though not to the same extent. There was nothing that could be done disciplinarily as no contraband, etc was ever found. On one occassion, while Kris was at recreation, CO Young searched Kris' cell and seized notes to support previous litigation. When asked why, Officer Young stated that because the notes were handwritten on notebook paper, they did not qualify as legal work under ADC policy. Often when Kris would ask for an account of what had been taken after a search of his cell had been done, CO Young would reply that Kris would just have to find out himself and that if anything was taken, it was because they were not allowed per ADC policy. She refused to provide any written record. These searches were conducted in an egregious manner which resulted in significant disruption of legal work while at the same time, no other inmate cells in Rincon housing unit 8-A were searched. Despite this behavior being accompanied by remarks making direct reference to Kris' filing of grievances, particularly by COs who searched Kris' cell, Kris continued to pursue administrative remedies.

52 On one occassion Kris was found on the floor of his cell semi-conscious, possibly after having suffered a seizure when he was not given his meds. (Mid June) He was placed on report and given a verbal warning as medical staff relied on claims that Kris' medical issues were not "real."

53 More examples could be given but the 15 page limit prevents Kris from doing so. Kris has documentation, grievance responses, own notes and similar as well as available

testimony from attorneys. To cite too many similar instances in complaint would only be cumulative

54 Prior to Saturday, June 23, 2013, Kris was attempting to address a number of issues through the prisons grievance system. As a direct result of these attempts of asserting his rights and a very restrictive media interview, Kris had come under increasing scrutiny by staff

55 Then at or about 2000 hours on Saturday, June 23, 2013, shortly after returning to his cell following recreation, Defendant Young came to Kris' cell demanding that he turn over a plastic bag that was on the floor. Kris somewhat surprised, asked "why" and was told that it's because he was not allowed to have any plastic bags in his cell. Kris found this immediately suspect as the bag in question had been on the floor of his cell during each of the previous searches and received absolutely no attention. These were searches that many of which had been conducted by Officer Young, even. Rather than argue with this officer, Kris emptied the bag of its contents and handed it over to officer Young. She left. Kris then made a notation of this strange incident in his journal.

56 Approximately 30-45 minutes later when # Kris was laying down in his bed attempting to review materials for his criminal appeals to prepare for an upcoming scheduled legal telephone call with his criminal appeals attorney that was scheduled for the following Tuesday, Defendant Vasquez opened Kris' cell door ordering Kris to put down his legal work and to come with him in a very threatening manner. Surprised, Kris asked where they were going and what was going on. Defendant Vasquez who was by himself declined to answer. He then subsequently chuckled to himself, "you'll find out soon enough."

57 Defendant Vasquez had Kris sit down on a chair in front of the control room threatening Kris that if he moved at all, Defendant Vasquez would hurt him. Kris stated that his injuries (for which he is housed in the medical special needs unit for) made sitting there very painful. Defendant Vasquez barked that it was per Rincon "medical's" orders and that they would be over to talk to Kris in a few minutes.

58 Approximately 20 minutes later RN Karumba from "west medical" came over. Kris asked him what was going on. Karumba at this time held out a yellow piece of paper and stated that Kris was being placed on "suicide watch" "for your own good." To this Kris replied, "what, who did this ?!" Karumba, beyond stating that it was per the on-call doctor, a person Kris had never spoken to, a name that RN Karumba could/would not reveal "because of security" refused to answer or listen to any questions stated by Kris. RN Karumba then left, not before discussing several confidential medical issues with officer Young who was also present.

59 Shortly thereafter, the security shift supervisor appeared. He also refused to speak with Kris at all. At the time of filing, his name is not known, beyond the fact that he is a male sergeant approximately 6 feet tall with brown hair.

60 Over the next 36 hours Kris was subjected to physical assault by Defendant Vasquez, placed naked in a cell without a working toilet and subjected to various other degrading punishments by officers void which was condoned and not reported to their superiors.

61 On Sunday morning officer Elias told Kris in response to a request for a HNR (health needs request) that if he continued to ask for one or filed another one, she would get the "excuse she needed" to pepper spray Kris with OC gas.

62 Finally, on Monday, June 25, 2013, Kris was seen by Dr. McDonald, a psychologist. Dr. McDonald informed Kris that security staff had contacted medical staff saying that Kris had a plastic bag in his cell that he was obviously planning to use in some form of tool to suffocate himself, thereby committing suicide. Dr. McDonald seemed a little surprised that medical staff had not spoken to Kris before the decision was made to put Kris on "suicide watch." Dr. McDonald further promised to move Kris immediately down to a lower level of watch and to try to get him back to his cell as soon as possible.

63 Before Dr. McDonald left Monday afternoon he had Kris moved to a 30 minute watch which was all he could do under current ADC/Corizon policy as it would not allow him to move Kris from "constant watch" back to Kris' medical solitary cell in housing unit 8-A. He stated that he had to follow policy even though Kris had been put on "suicide watch" as retaliation for filing administrative grievances.

3F

64 On a "30 minute" watch, Kris should have been issued a regular wool blanket instead of the blood stained smock that Defendant Vasquez had given him Saturday night. But Defendant Vasquez overruled Dr. McDonald's order stating that Kris did not deserve regular blankets.

65 Later Monday night Defendant Vasquez again came to Kris' cell, this time wanting to know details about Kris' legal strategy incident to CV12-2149. Kris refused to provide specifics to which Defendant Vasquez threatened Kris with disciplinary action for "obstructing an officer," a gambit that Defendant Vasquez has employed previously along with other Defendants to (at the bidding of Defendant Corizon Health Services) attempt to exact information about Kris' eighth amendment claim in that matter.

66 Early Tuesday morning Dr. McDonald without any further questions, took Kris off "watch" altogether so he would be able to get back to his cell in time to get some legal materials prior to his scheduled call (legal call) Yet ADC staff refused to move Kris the 30 yards or so back to his cell where all of his legal materials were at in time for Kris to be able to access them prior to said telephone call with his criminal appeals attorney. ADC staff citing policy also refused to let Kris get a notepad from his cell prior to his call.

67 Finally at approximately 1200 hours, Kris was collected by Defendant Mulcahey. Defendant Mulcahey was apparently filling in for Kris' regular case worker, Defendant CO III Straub.

68 When the legal call started, Defendant Mulcahey refused to give Kris any privacy. Kris' attorney then had to spend approximately 10 minutes arguing with Defendant Mulcahey that he should not be allowed to listen in at all to the telephone conversation. As a result of this and lack of writing materials, the call was not the optimum use of time that Kris had hoped for and serves as only the latest example of ADC Defendants attempt to limit Kris' contact with his attorneys and the courts. Also revealing the complete breakdown of ADC policy/policy that does not provide for adequate protection from abuses by the state and the state's staff.

69 On Tuesday afternoon when Defendant Vasquez returned to work, he and others were obviously upset that Kris had been taken off of "suicide watch" altogether and continued harassing Kris in his regular cell, which is on the other side of the building in housing unit B.

70 On information and belief, Vasquez in particular has been involved in many more use of force situations than most CO's. Kris observed him taking sadistic pleasure in threatening inmates including a partially blind inmate for no good reason. Also, Kris was told the story about an inmate who lived at the unit prior to Kris' time there, the inmate named Lomeli (sic?) was repeatedly assaulted by Vasquez. When he went to Straub for help rather than elevate his complaint up the chain of command, Straub would tip off Vasquez who then assaulted the inmate some more.

71 With Kris' grievances, Straub would allow Vasquez and Young to use his office after hours where he knowingly left Kris' grievances such that they could read them. Other inmates also told Kris that Straub had encouraged staff i.e. Vasquez to take action against Kris due to the fact that he was filing grievances which complicated Straub's "work"

72 As Kris' complaint was now against Straub and Vasquez, Kris could not follow procedure and file an informal to the CO III (Straub) Kris wrote and had it sent to Warden (Defendant) Schroder who responded for him to follow normal procedure. No meaningful relief was provided and Kris could obviously not complain to Straub about Straub's conduct.

73 Violations do not end here. After Kris was transfered to Manzanita Unit, medical staff acting in concert and participation with Corizon and ADC had told inmates that Kris could not get along with inmates at Rincon, that is why he was transfered. When reality is that Straub wanted to "get rid of him" in an attempt to have Kris assaulted by other inmates.

74 Also at Manzanita, a legal call again with Candaleria was overheard and interrupted by CO III Hindipla because Kris was overheard discussing "medical" which ADC did not want disclosed with "outsiders."

15 Injury: All defendants in general, by interfering with Kris' right to have contact with his criminal appellate counsel, through interference with mail, denial of mail while Kris was hospitalized and similar actions, several important issues were consequently not included in the criminal appeal and were as such procedurally defaulted. While Kris cannot prove that he would have won the appeal had Defendants not violated his sixth amendment right to counsel, Kris was prevented from presenting non-frivolous points and claims to the court of appeals. Kris has not readily available state law remedy and issues are now procedurally defaulted. All direct appeals were subsequently lost as were higher appeals.

16 Specific Defendants: Defendant Straub, by denying Kris his scheduled legal call while Kris was injured and housed in Rincon 8 in the end of December 2012 without access to pen and paper per policy violated Kris' rights. Defendant Straub also engaged in similar conduct at later times.

77 Defendants Ryan and/or Schröder: Kris cannot be certain of which one was more responsible without discovery. Either Ryan or Schröder or both were the official policy makers within the ADC. The policy of not allowing attorney contact for "security reasons" for over a month while Kris was hospitalized was a violation of Kris' sixth amendment right to be represented in direct appeal. Kris has no reason to suspect that individual officers violated his rights while hospitalized as so many officers, whose names can be discovered, reiterated the same policy. Also while not in itself perhaps a constitutional violation, when denied all incoming and outgoing mail while hospitalized, the denial of private telephone calls or visits with counsel also became a violation.

78 Defendant Stangl: Failed to allow Kris to meet with appellate attorney privately - violating ADC policy and Kris' sixth amendment rights. Kris' ability to speak freely with his attorney was chilled.

79 Defendant Jacobs: after having been notified, failed to take corrective action as to this situation as Deputy Warden of Rincon Unit.

80 Defendant Wexford: by being the cause of injuries described in CV12-2149, affected Kris' ability to meaningfully participate in his appeal, by leaving Kris injured severely and in excruciating pain.

## COUNT II

1.  State the constitutional or other federal civil right that was violated: First Amendment

2.  **Count II.** Identify the issue involved.  Check **only one.**  State additional issues in separate counts.
    - ☐ Basic necessities
    - ☐ Mail
    - ☐ Access to the court
    - ☐ Medical care
    - ☐ Disciplinary proceedings
    - ☐ Property
    - ☐ Exercise of religion
    - ☐ Retaliation
    - ☐ Excessive force by an officer
    - ☐ Threat to safety
    - ☒ Other: Freedom of Speech, Right to Communicate with the outside world

3.  **Supporting Facts.** State as briefly as possible the FACTS supporting Count II.  Describe exactly what each **Defendant** did or did not do that violated your rights.  State the facts clearly in your own words without citing legal authority or arguments.

    Plaintiff incorporates by reference paragraphs 1 thru 74 as though fully set forth herein.

    Kris (Plaintiff) believes that the 9th Circuit Court of Appeals has held that in a prisoner First Ammendment freedom of speech claim, no actual injury must be demonstrated. See Phillips v. Hust 477 F.3d.1070 (9th Cir 2007)

4.  **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

    81  In General: this is a first amendment claim as to correspondence - not the closely associated right of access to courts. By imposing policies such as no mail while in hospital, engaging in repeated mishandling of Kris' mail, (continued on 4A)

5.  **Administrative Remedies.**
    a.  Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?  ☒ Yes  ☐ No
    b.  Did you submit a request for administrative relief on Count II? See exp. below  ☒ Yes  ☐ No
    c.  Did you appeal your request for relief on Count II to the highest level? See exp. below ☐ Yes  ☐ No
    d.  If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. Most facets of this count were exhausted. Kris did make all possible attempts at exhaustion but was unable to exhaust some claims due to the actions of Defendants as described in the supporting facts. Also, grievance mechanisms were not available to Kris while in the hospital.

4

delivering mail months on occasion after it was received by the prison, and failing to collect mail in a timely fashion, Kris' first amendment rights were violated. This is made even more serious by the fact that all instances described herein involve "legal mail" that is mail that should be afforded greater protection than regular mail. Also, staff at Rincon insisting that they had the right to read sections of outgoing and incoming mail (legal mail) as long as they did not read the letter in its entirety. This violated Kris' rights to correspond with his attorneys confidentially. Also violated but not enough room to detail in this complaint was Kris' right to "social mail" with friends and family.

82 Defendants Ryan, Schröder and Jacobs: are all official policy makers within the ADC at various levels. Discovery is needed to discover/determine which or if all Defendants are responsible and at which times for violating Kris' first amendment right to correspondence with the outside world, specifically and more importantly in the realm of "legal mail," privileged mail. Clearly all officers who denied Kris mail while in the hospital and in other ways of communication were acting according to policy or custom that has the effect of law. Ryan is responsible for central policy. Schröder was responsible for Tucson mail room following ADC policy - violations were systemic. Jacobs was responsible for allowing a custom of allowing officers to read sections of legal mail, especially after being notified by Kris that this was a widespread custom within Rincon Unit. So many different officers were involved, it is impractical to name them all, further indicating a wide-spread problem.

83 Defendants Straub, Stangl and Mulcahey: chilled Kris' ability to speak freely with his civil attorney on various pretexts, or denied telephone calls altogether. As a result, ongoing litigation was delayed and Kris' attorney in CV12-2149 was not appraised of how bad things were, as a result Kris suffered unnecessarily when injunctive relief could have been sought immediately. Instead Kris had to suffer excruciating pain when Corizon staff failed to ensure his prescriptions were filled. Kris' life was also placed at risk on more than one occasion and Kris did not even have access to confidential outgoing legal mail on a regular basis to notify his attorney.

84 Defendant Corizon: denied Kris' proper follow-up care. This Defendant (see also CV13-1797) contributed to this denial by making it hard for Kris to concentrate due to pain and to meaningfully interact with counsel.

### COUNT III

1.  State the constitutional or other federal civil right that was violated: _First Amendment_

2.  **Count III.** Identify the issue involved. **Check only one.** State additional issues in separate counts.
    - ☐ Basic necessities
    - ☐ Disciplinary proceedings
    - ☐ Excessive force by an officer
    - ☐ Mail
    - ☐ Property
    - ☐ Threat to safety
    - ☐ Access to the court
    - ☐ Exercise of religion
    - ☐ Other: _____
    - ☐ Medical care
    - ☒ Retaliation

3.  **Supporting Facts.** State as briefly as possible the FACTS supporting Count III. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

    85 Plaintiff incorporates by reference paragraphs 1 thru 74 as though fully set forth therein.

4.  **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

    86 Defendants Straub, Vasquez, Young, Mulcahey (and possibly Jacobs); by engaging in a pattern of conduct of taking action against Kris for his exercise of first amendment rights through engagement in activities such as grievances,
    (continued on 5A)

5.  **Administrative Remedies.**
    a.  Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?
    b.  Did you submit a request for administrative relief on Count III? See exp. below     ☒ Yes   ☐ No
    c.  Did you appeal your request for relief on Count III to the highest level? See exp. below   ☒ Yes   ☐ No
    d.  If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. Most facets of this count were exhausted. Kris did make all possible attempts at exhaustion but was unable to exhaust some claims due to the actions of Defendants as described in the supporting facts. Also, grievance mechanisms were not available to Kris

If you assert more than three Counts, answer the questions listed above for each additional Count on a separate page. While in the hospital.

litigation against ADC officials, at the time threatened litigation against Corizon-violated Kris' rights under the first amendment. There is no other valid "peneological" explanation for their actions. While placing someone on suicide watch may not be unconstitutional, when it is done under false pretenses to retaliate, it becomes un-constitutional. The motivating factor was not i.e. misbehavior, or disciplinary issues but rather as actually told to Kris by Vasquez – a desire to retaliate on behalf of Straub. This is also evident in a number of cell searches Kris was subjected to by these defendants in a short period of time. Kris was placed in fear of his life for exercising his first amendment rights and his ability to seek relief from criminal conviction became even harder.

87 Defendants Jacob and Schröder: continued to employ a guard who has a known history of excessive force incidents, namely Vasquez, and did not properly supervise or train him. Thus they acquiesced acquiesced in allowing Straub to encourage Vasquez to retaliate against Kris.

## Count IV continued

own policy that mail to/from media is to be treated as confidential, Ryan violated Kris' right to contact with media. It is submitted that this denial was a result of Kris' pending litigation against Ryan, that there are no procedural safeguards to ensure that denials of interviews are content neutral. In fact, Kris further submits that denial of in person interview was because Ryan does not want media to learn of how deficient ADC's medical services in fact are.(or that of their contractors) Further, no access which would not be given to an approved visitor was requested.

## Count V continued

The denial of mail complicated this further in that Kris was not able to even get family on the outside to write him and assist him with legal matters.

92 An example of injury is that Kris was unable to learn what constituted an appealable order in the Ninth Circuit, and thus filed an interlocutory appeal in the instant case which he would have been able to learn would be denied on jurisdictional grounds had he had access to a law library or a person adequately trained in the law. Finanially, $455 was wasted on this appeal along with associated postage and photocopies. Had Kris been able to learn the law, he would not have appealed at this stage. This also protracted the instant litigation.

## Count VI continued

as well as shoving Kris and threatening Kris that he would break his neck again, i.e. throw him over his walker. By engaging in these acts solely for a sadistic motive, Defendant Vasquez violated Kris' right to be free from cruel and unusual punishment all done for retaliatory motives.

## D. CAUSE OF ACTION

### COUNT IV

1. State the constitutional or other federal civil right that was violated: <u>First Amendment</u>

2. **Count I.** Identify the issue involved. Check only one. State additional issues in separate counts.

☐ Basic necessities          ☐ Mail            ☐ Access to the court      ☐ Medical care
☐ Disciplinary proceedings   ☐ Property        ☐ Exercise of religion     ☐ Retaliation
☐ Excessive force by an officer  ☐ Threat to safety  ☒ Other: <u>contact with news media</u>

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count I. Describe exactly what each **Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

88 Plaintiff incorporates by reference paragraphs 1 thru 74 as though fully set forth herein.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

89 Defendant Ryan: By not allowing access to a newspaper interview, having no proper process for review of denial, not providing any reason for denial and not allowing Kris to speak privately/confidentially with media and not enforcing ADC's (continued on bottom of page 5A)

5. **Administrative Remedies:**

   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?   ☒ Yes  ☐ No

   b. Did you submit a request for administrative relief on Count I? See exp. below   ☒ Yes  ☐ No

   c. Did you appeal your request for relief on Count I to the highest level? See exp. below ☐ Yes  ☐ No

   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. Most facets of this count were exhausted. Kris did make all possible attempts at exhaustion but was unable to exhaust some claims due to the actions of Defendants as described in the supporting facts. Also, grievance mechanisms were not 6 available to Kris while in the hospital.

## D. CAUSE OF ACTION

### COUNT II

1. State the constitutional or other federal civil right that was violated: First Amendment

2. **Count I.** Identify the issue involved. Check **only one.** State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Disciplinary proceedings
   - ☐ Excessive force by an officer
   - ☐ Mail
   - ☐ Property
   - ☐ Threat to safety
   - ☒ Access to the court
   - ☐ Exercise of religion
   - ☐ Other: _____
   - ☐ Medical care
   - ☐ Retaliation

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count I. Describe exactly what each **Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

90. Plaintiff incorporates by reference paragraphs 1 thru 74 as though fully set forth herein.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

91. Defendant Ryan: is the official policy maker for the ADC. Ryan has decided to replace law libraries with paralegals. ADC has inadequate legal resources for inmates. It does not have legal libraries or access to persons trained in the law. (continued on bottom of page 5A)

5. **Administrative Remedies:**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?  ☒ Yes  ☐ No
   b. Did you submit a request for administrative relief on Count I? See exp. below  ☒ Yes  ☐ No
   c. Did you appeal your request for relief on Count I to the highest level? See exp. below ☐ Yes  ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. Most facets of this count were exhausted. Kris did make all possible attempts at exhaustion but was unable to exhaust some claims due to the actions of Defendants as described in the supporting facts. Also, grievance mechanisms were not available to Kris while in the prison.

7

### D. CAUSE OF ACTION

### COUNT VI

1. State the constitutional or other federal civil right that was violated: Eighth Amendment

2. **Count I.** Identify the issue involved. **Check only one.** State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☒ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count I. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   93 Plaintiff incorporates by reference paragraphs 1 thru 74 as though fully set forth herein.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

   94 Defendant Vasquez: through threats and intimidation and malicious use of force including denying Kris a clean cell, denying him water, denying him blankets even though psych had told Vasquez to allow Kris to have blankets, (continued on bottom of page 5A)

5. **Administrative Remedies:**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?  ☒ Yes  ☐ No
   b. Did you submit a request for administrative relief on Count I? See exp below  ☒ Yes  ☐ No
   c. Did you appeal your request for relief on Count I to the highest level? See exp below ☐ Yes  ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. Most facets of this count were exhausted. Kris did make all possible attempts at exhaustion but was unable to exhaust some claims due to the actions of Defendants as described in the supporting facts. Also, grievance mechanisms were not available to Kris while in the hospital.

### E.   REQUEST FOR RELIEF

State the relief you are seeking:

A. Kris seeks declaratory relief that his rights were violated as to each count.

B. Kris seeks compensatory damages for denial of access to his attorneys, acces to the courts, and freedom of speach, in an ammount to be determined at trial.

C. Kris seeks punative damages against all defendants, in an ammount to be determined at trial.

D. Any other relief this court may deem just and proper.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _August 14, 2014_
            DATE

_____
SIGNATURE OF PLAINTIFF

_TL- another inmate who helped write due to_    PLAINTIFF, PRO SE

(Name and title of paralegal, legal assistant, or   _Plaintiff's severe_
other person who helped prepare this complaint)   _Pain and muscle spasms._

_____
(Signature of attorney, if any)

_____
_____
_____
(Attorney's address & telephone number)

### ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form. If you need more space, you may attach no more than fifteen additional pages.  But the form must be completely filled in to the extent applicable.  If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages.